MARGINAL DOCK COMPANY, INC., Respondent, *v.* THEO. FICKE, INC., Defendant, Impleaded with STATES MARINE & COMMERCIAL COMPANY, INC., Appellant.

First Department, March 17, 1922.

**Principal and agent — liability of agent on contract with third person — action against agent to recover for rental of ground used for storage — bill for storage originally sent to principal — no denial that plaintiff did not know of principal at time of contract — error to refuse to charge that if plaintiff knew when contract was made that appellant was acting for disclosed principal appellant is not liable — question of fact for jury.**

In an action to recover rental for the storage of goods on a lot belonging to the plaintiff, wherein it appeared, without denial on the part of the plaintiff, that at the time the appellant made arrangements to store the property on plaintiff's land it disclosed to the plaintiff that it was acting as agent for a third person, and that the plaintiff sent two bills for rent to the appellant's principal, it was error for the court to charge the jury, as a matter of law, that the appellant was liable, and to refuse to instruct them that if they found that the plaintiff knew at the time the arrangement was entered into that the appellant was acting solely as agent for a third person, the owner of the property stored, they should find for the appellant.

If the plaintiff contracted with the appellant as agent for a disclosed principal, the appellant can only be held liable for damages if it was not authorized so to contract for its principal.

APPEAL by the defendant, States Marine & Commercial Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 30th day of April, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 3d day of May, 1921, denying said defendant's motion for a new trial made upon the minutes.

*Noble, Morgan & Scammell* [*Herbert Noble* and *James H. Kirkpatrick* of counsel], for the appellant.

*Coleman, Stern & Gotthold* [*Ernest J. Ellenwood* of counsel; *Clifford Chalmer* with him on the brief], for the respondent.

LAUGHLIN, J.:

Plaintiff, a Rhode Island corporation, alleged an express agreement made on or about the 16th of August, 1917, jointly with the appellant and the other defendant, both of which are domestic corporations, for the payment to the plaintiff by them of $10 per day for the storage of fluid drums on certain premises owned by plaintiff, situate at Smith and Percival streets in the borough of Brooklyn, New York; and that, pursuant thereto, defendants used and occupied said premises for the storage of fluid drums, and are still so using and occupying the same, and have failed to pay the plaintiff to its damage in the sum of $5,200 and interest. Appellant's answer put in issue the allegations of the complaint with respect to the making of the contract and the use and occupation of the premises. The evidence showed that the other defendant was engaged in the trucking business, and that its only connection with the use and occupation of the premises was in handling the fluid drums at the instance of the appellant. At the close of the evidence the court required the plaintiff to elect which defendant it would attempt to hold liable. It elected to proceed against the appellant and the complaint was dismissed as to the other defendant. Plaintiff read in evidence the examination of appellant's president before trial. He testified that appellant acted as agent and manager for steamship owners and conducted a commercial business; that in August, 1917, as agent for the Cogwin Chemical Company, it chartered the steamship *Fixstjerne* for the shipment to Buenos Ayres of some fluid drums, and acted as such agent in arranging for the shipment and loading thereof; that appellant's principal notified it that the drums would be delivered at the dock, and they were there delivered by the other defendant employed

by appellant's principal on its recommendation; and that appellant engaged the stevedores to load the drums onto the steamer; that 203 of the drums delivered at the dock were deemed to be in a condition unfit for shipment; and that the men engaged in loading the vessel left the rejected drums somewhere adjacent to the dock. The president of the Cogwin Company, called by the plaintiff, testified that on the 16th of August, 1917, with a view to purchasing certain fluid drums which were in Hoboken, he requested the appellant, through one Hunter, the manager of its forwarding department, to have the drums inspected to ascertain whether they were in shipping condition; and that Hunter agreed to have that done, and thereafter reported that the drums were in good condition, and the witness authorized the appellant to buy them, and Hunter suggested that, if the drums were to be shipped on the *Fixstjerne,* which had been chartered by appellant for the chemical company, the Cogwin Company have the appellant's truckman, Theo. Ficke, Inc., do the work; and he instructed Hunter to go ahead and have the drums removed from Hoboken to the steamship and to take care of the matter; and, in effect, that his company gave no further instructions and left the entire matter in the hands of the appellant; that he knew that some of the drums were not accepted for shipment on the steamer and were recoopered on a vacant lot in the vicinity; that his company agreed to pay the appellant the expenses of trucking, hauling and incidental expenses of checkers at the dock; and that appellant, throughout these transactions, acted solely as his company's agent; that his company did not pay the Ficke Company for the trucking, and did not contract with appellant to pay for the storage of the drums; that on the 6th of September, 1917, his company received a bill from plaintiff, dated the day before, for $160, charged to it under date of August sixteenth for space rented on the property in question for the " storage of fluid drums at $10 per day," and received a like bill on the 2d of October for $460, $300 being for the month of September, and $160 being for the bill theretofore rendered; and that it sent these bills to the appellant. One Rogers, a dockmaster in the employ of the owner of the wharf at which the *Fixstjerne* was docked, testified that the loading of the steamer with drums of chloride of potash commenced on the 16th of August, 1917; that fifteen or twenty truckloads of the drums came that date; that the trucks had the name of Ficke on them, and the drums were about four feet high and larger around than a flour barrel and weighed 600 or 700 pounds; that plaintiff owned a vacant lot across the street from the wharf, and he telephoned its manager, one Egan, who came down to the dock and talked

with somebody, whose name is not given; and that after that talk some of the drums on the trucks were put on the plaintiff's lot; and that subsequently some of the drums were taken from the lot and loaded on the vessel by stevedores in the employ of the appellant; that, at Egan's request, he kept count of and reported the number of drums placed on the lot each day; and that one day there were 225 on it, and, when the steamer sailed about two weeks after the loading commenced, there were 29 drums left on the lot; that at first " they " proceeded to unload the trucks onto the dock and to load the drums onto the steamer, but the dock became blocked " so that they hired this lot across the way to put them in;" but that he did not hear the conversation Egan had with the unnamed individual; that on the sixteenth of August the dock was blocked up with merchandise " so we could not put any more there." Egan testified that he was general manager of the plaintiff at the time and had charge of the premises in question; and that he went to the dock on the sixteenth of August after a conversation with Rogers over the telephone, and saw half a dozen trucks bearing the name, " Theo. Ficke," loaded with fluid drums, standing in the street alongside the plaintiff's premises, and had a talk with Rogers, and spoke to " another gentleman who seemed to be in charge," and was on plaintiff's premises, whose name, however, he did not know. That conversation was excluded, and the witness testified that, after the conversation, the drums were taken from the trucks and placed on plaintiff's premises and afterwards placed on board the steamer; that the dock at that time was congested and there was no room thereon for any more freight. Plaintiff failed to prove an express agreement with any one for the payment of ten dollars a day for using the lot for storage; but it presented evidence tending to show that the fair and reasonable value of the space occupied by each drum was five dollars per month, and that some of the twenty-nine drums, left on plaintiff's premises after the steamer sailed, remained there until about December, 1919. The action was commenced on the 21st of January, 1919, a little more than a year and five months after the commencement of the storing of the drums on plaintiff's premises.

Appellant moved for a nonsuit, on the ground, among others, that it was acting for a disclosed principal, and that plaintiff, as is shown by the bills rendered to its principal, knew that whoever made the contract represented and assumed to act for the Cogwin Company. The motion was denied, and thereupon Ficke testified, in behalf of his company, that it was employed by the appellant to haul 256 drums from the Barclay street station of the New York Central to the dock at the foot of Smith street, and 61 drums from

Lannon's Warehouse at 58 West street to the dock; and that the total number of drums hauled by it was 317; but that it hauled none from Hoboken; and that he did not know how the drums were brought from Hoboken; that all of the drums his company hauled were not placed on the lot; and that, on the twenty-eighth of August, it hauled 256 drums from the lot to the pier; but that he did not know whether or not they were drums which it had hauled to the lot; and that his company was paid by the appellant. Appellant gave evidence tending to show that the drums were stored in part on the street and in part on the lot, and that the fair and reasonable rental value of the entire premises of the plaintiff was seventy-five dollars or a little more per month. Hunter, called by the appellant, denied that he was requested by the chemical company to have the drums at Hoboken inspected and passed upon; and he testified that his only conversation with the president of the chemical company on the subject of an inspection was with respect to whether the steamship company would accept the drums; that the appellant arranged for the trucking of only part of the drums, and engaged the Ficke Company for that purpose. Appellant showed that the steamship sailed on the 26th of September, 1917. At the close of the evidence appellant renewed its motion for a dismissal. The court ruled as matter of law that the sending of the bills by the plaintiff was a negligible act and constituted no election to hold the appellant's principal. While counsel for the appellant was arguing to the jury that the sending of the bills was with knowledge that the appellant was acting as agent, the court interrupted, suggesting that there was no question for the jury on that point, and ruled that the only question that would be submitted to the jury was as to the reasonable value of the use of the premises and the time the drums were on them, and counsel for the appellant excepted. The court instructed the jury as matter of law that the appellant was liable, and left to them only the questions of reasonable value and period of use. Appellant excepted and requested the court to instruct the jury that, if they found that plaintiff knew on the 16th of August, 1917, that appellant was acting solely as agent for the Cogwin Chemical Company, the owner of the drums, they should find for the defendant, and excepted to the refusal so to instruct the jury.

I am of opinion that the court erred in refusing to charge as requested. The plaintiff on the 5th of September, 1917, mailed to the chemical company a bill charging it by its correct name and business address. The jury would have been warranted in finding that it acquired that knowledge on the sixteenth of August

before any of the drums were placed on its premises and at the interview between Egan and the unknown individual with whom he negotiated, for that is the only evidence in the case indicating the transmission of any information to the plaintiff on the subject. In the circumstances it might be inferred reasonably that Egan was informed by whoever negotiated the arrangement with him that the contract was made in behalf of the chemical company. We are not concerned with any question relating to appellant's authority to make such a contract as agent of the chemical company, for that issue was not presented. The case, as presented, is that a parol arrangement was made on the premises on the sixteenth of August between the general manager of the plaintiff and an unidentified individual, when some six truckloads of fluid drums stood in the street adjacent to the premises with no place to be unloaded owing to the congestion on the dock; and they negotiated some sort of an arrangement for storing the fluid drums on the plaintiff's premises; and that at the expiration of the month a formal bill was made out by the plaintiff to the chemcial company and mailed to it, by which it was charged ten dollars per day for the use of the premises during the period covered by the bill, commencing on the day on which the arrangement was made, with no denial on the part of the plaintiff that the information, on which it made out the bill, was acquired by it at the time the arrangement was made, and a like bill was sent at the end of the next month. This evidence may not be conclusive with respect to the plaintiff having acquired notice at the time that whoever sought the use of its premises assumed to act as agent for the chemical company; but it certainly is open to that inference, and should have been left to the jury as a question of fact. If plaintiff contracted with a disclosed principal, the agent can only be liable for damages if it was not authorized so to contract for its principal.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.